Nott, J.,
dissenting:
It is true that when a man agrees to do a specific thing for a specific price, tbe law regards him as warranting tbe accomplishment of tbe undertaking, and that be can recover nothing until tbe work be done. But it is also true that when one man engages tbe services of another, the law pays some attention to tbe circumstances of tbe case, and to tbe calling, profession, or trade of tbe party employed, assuming, in tbe absence of an express agreement to tbe contrary, that tbe compensation is tO' be such as is ordinarily given to persons of like occupation or pursuits. Thus, if 'I send a wrecker to help my stranded ves *423 sel, tbe law will imply that he is engaged upon the usual terms that regulaté such employments, and that he cannot recover unless he renders assistance, and then that his compensation will be salvage and not a per diem. So if I engage an artist to paint my portrait, he cannot recover for half the value of the picture if it be but half finished. But if I-hire a gardener to grow my vegetables, or a laborer to dig my cellar, it would be no defense for me to say that the one had failed to make a crop or the other had been prevented from digging the cellar by a substratum of rock which he should have foreseen when I employed him.
In the case now before the court, the Louis D’Or was neither a wrecker nor a lighter. She wras a frieght and passenger steamer plying on the waters of the Bed Biver, and then pursuing her usual avocation. She was one of a class of vessels whose employment is universally compensated under an entirely different principle than that which governs the compensation of wreckers. Furthermore, she -was on her upward trip, and her master had not seen the stranded steamer and was entirely ignorant of the condition of affairs and of the extent of the risk which he is held to have covenanted to assume. There is no allegation by the defendants, nor finding by the court, that he was guilty of fault or negligence; so the question is simply one of construction. It is undeniable that the master might have agreed to take the risk of his vessel’s failure to render assistance, or that the quartermaster might have stipulated that the compensation should be contingent upon success, but, in the absence of any such express agreement or stipulation, I do not think that the law will thrust any such implication into the case. A wrecker would be held t'o have taken the risk without express agreement, because it is a wrecker’s business to take such risks. An ordinary river-going craft should not be held to have impliedly assumed such a risk, because ordinary craft do not take such risks as a matter of business, and, when employed by other persons than their owners, are compensated by the day or month.
In this case it also appears that the contracting parties did not fall into any difference of interpretation of their agreement. The quartermaster recognized the fact that he had interrupted a steamer’s passage in order that she might do the Government a service, and he did what seems to me a very sensible *424 and just thing, he computed the fair value of her time, and gave the owners the usual voucher for a service rendered. The owners accepted the voucher and seek to recover upon it. The terms of the employment were at best doubtful, and the case is in this particular like Garrison’s, (7 C. Cls. E. p. 78,) where an ordnance officer gave vouchers according to his and the contractor’s interpretation of the agreement, and this court saw fit to award, to the contract an entirely different and more restricted construction, and the Supreme Court reversed its decision.
I think that the claimants should recover for their services rendered the amount fixed by the quartermaster who employed them.
As to the steamer National, the voucher given by the quartermaster, though reduced in amount by the Quartermaster-General, was paid; and I agree that the claim, being unliqui-dated and fairly disputable, was compromised and finally settled by the payment and receipt in full.